**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RENNE BACA**, on behalf of himself and all others similarly situated,<br><br>                       Plaintiff,<br><br>v.<br><br>**SET FORTH, INC.**<br><br>                    Defendant | Case No. 1:24-cv-12497<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Renne Baca ("Plaintiff") brings this Class Action Complaint ("Complaint") against Set Forth, Inc. ("Defendant" or "Forth") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

**NATURE OF ACTION**

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard sensitive information of its clients' customers.

2.      This class action arises from Defendant's failure to protect highly sensitive data.

3.      Defendant "provide cloud-based customer relationship management (CRM) solutions powered by the Set Forth platform."[1]

4.      As such, Defendant store a litany of highly sensitive personal identifiable information ("PII") about their current and former consumers.

---

[1] *Notice of Data Security Incident*, FORTH, https://www.setforth.com/notice-of-data-security-incident/ (last visited Nov. 13, 2024).that data when cybercriminals infiltrated their insufficiently protected computer systems in a data breach (the "Data Breach").

5.      As a result of the Data Breach, Plaintiff and approximately 1,500,000 Class Members[1] suffered concrete injuries.

6.      Plaintiff is a Data Breach victim, having received a breach notice. He brings this class action on behalf of himself, and all others harmed by Defendants' misconduct.

7.      The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, their current and former consumers' private information was exactly that— private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

8.      Plaintiff, **Renne Baca**, is a natural person and citizen of California where he intends to remain.

9.      Defendant, Set Forth, Inc., is a corporation incorporated in Delaware and with its principal place of business at 1900 E Golf Road, Suite 550, Schaumburg, Illinois 60173.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendants are citizens of different states. And there are over 100 putative Class Members.

11.      This Court has personal jurisdiction over Defendant because Set Forth, Inc. is headquartered in Illinois and because all Defendant regularly conduct business in Illinois and have sufficient minimum contacts in Illinois.

**Venue is proper in this Court because Set Forth, Inc.'s principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.**

**BACKGROUND**

*Defendants Collected and Stored the PII of Plaintiff and the Class*

12.     Defendants are businesses that "provide cloud-based customer relationship management (CRM) solutions powered by the Set Forth platform."[2]

13.     As part of their business, Defendant receive and maintain the PII of thousands of their current and former consumers.

14.     In collecting and maintaining the PII, Defendant agreed they would safeguard the data in accordance with their internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII. Under state and federal law, businesses like Defendant have duties to protect their current and former consumers' PII and to notify them about breaches.

*Defendants' Data Breach*

15.     On May 21, 2024, Defendants was hacked in the Data Breach.[3]

16.     Because of Defendants' Data Breach, at least the following types of PII were compromised: "names, Social Security numbers, dates of birth, and addresses."[4]

17.     In total, Defendants injured at least 1,500,000 persons—via the exposure of their PII—in the Data Breach.[5] Upon information and belief, these 1,500,000 persons include their current and former consumers.

---

[2]   *Notice of Data Security Incident*, FORTH, https://www.setforth.com/notice-of-data-security-incident/ (last visited Nov. 13, 2024).

[3]   *Notice of Data Security Incident*, FORTH, https://www.setforth.com/notice-of-data-security-incident/ (last visited Nov. 13, 2024).

[4]   *Id.*

[5]   *Data Breach Notifications*, MAINE ATTY GEN, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792- a1252b4f8318/5c00fedb-134a-4436-b778-5df30b84cdab.html (last visited Nov. 13, 2024).

18.     And yet, Defendant waited over until November 8, 2024, before they began notifying the class—a full 171 days after the Data Breach began.[6]

19.     Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

20.     Defendant failed in their duties when their inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the PII. And thus, Defendant caused widespread injury and monetary damages.

21.     Further, the Notice of Data Breach shows that Defendant cannot—or will not—determine the full scope of the Data Breach, as Defendants have been unable to determine precisely what information was stolen and when.

22.     Defendants have done little to remedy their Data Breach. True, Defendant have offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendant inflicted upon them.

23.     Because of Defendants' Data Breach, the sensitive PII of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

### *Plaintiff's Experiences and Injuries*

24.     Defendant obtained—and then exposed Plaintiff PII.

25.     Defendant obtained and maintained Plaintiff's PII. As a result, Plaintiff was

---

[6] *Notice of Data Security Incident*, FORTH, https://www.setforth.com/notice-of-data-security- incident/ (last visited Nov. 13, 2024).

injured by Defendant's Data Breach.

26.     Plaintiff received a Notice of Data Breach on or about November 11, 2024.

27.     Through their Data Breach, Defendant compromised Plaintiff's name, date of birth, address, and Social Security number.

28.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. After all, Defendants directed Plaintiff to take those steps in their breach notice.

29.     Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

30.     Plaintiff suffered actual injury from the exposure and theft of his PII—which violates his rights to privacy.

31.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendants was required to adequately protect.

32.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's' Data Breach placed Plaintiff's PII right in the hands of criminals.

33.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

34.     Today, Plaintiff has a continuing interest in ensuring that his PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

35.     Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress.

36.     Stolen PII is one of the most valuable commodities on the criminal information black market.

37.      It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

38.     Defendants disclosed the PII of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

39.     Defendants' failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

*Defendant Knew—Or Should Have Known—of the Risk of a Data Breach*

40.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

41.     In 2021, a record 1,862 data breaches occurred, exposing approximately

293,927,708 sensitive records—a 68% increase from 2020.[7]

42.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[8]

43.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendant.

### *Defendant Failed to Follow FTC Guidelines*

44.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

45.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[9]

46.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

47.     Furthermore, the FTC explains that companies must: not maintain information

---

[7] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

[8] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[9] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

longer than is needed to authorize a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers use reasonable security measures.

48.     In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to their current and former consumers' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

*Defendants Failed to Follow Industry Standards*

49.     Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

50.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

## CLASS ALLEGATIONS

51.     Plaintiff brings this nationwide class action on behalf of herself and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4) and/or 23(c)(5).

52.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**

All individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant in November 2024 (the "Class").

53.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

54.     Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

55.     Numerosity: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. According to the breach report submitted to the Office of the Maine Attorney General, at least 1,500,000 Class Members were impacted in the Data Breach.[10] The Class is apparently identifiable within Defendant's records, and Defendant has already identified these individuals (as evidenced by sending them breach notification letters).

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

    a.  Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and

---

[10]

Class Members;

b. Whether Defendant had respective duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiff and Class Members are entitled to actual damages and/or nominal damages as a result of Defendant's wrongful conduct;

k. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

57. <u>Typicality:</u> Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct

and now suffers from the same violations of the law as each other member of the Class.

58.    <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

59.    <u>Adequacy:</u> Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages she has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intend to prosecute this action vigorously.

60.    <u>Superiority and Manageability:</u> The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically

impractical and impose a burden on the courts.

61.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

62.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

63.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

64.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

65.     Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are

appropriate on a class- wide basis.

66.     Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

67.     Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII; and Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

<u>CLASS ACTION ALLEGATIONS</u>

**<u>FIRST CAUSE OF ACTION</u>**

**Negligence (On Behalf of Plaintiff and the Class)**

68.     Plaintiff incorporates by reference paragraphs 1- 67 as if fully set forth herein.

69.     Plaintiff and the Class (or their third-party agents) entrusted their PII to Defendants on the premise and with the understanding that Defendants would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

70.     Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

71.     Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

72.     Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices.

73.     Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

74.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII they were no longer required to retain under applicable regulations.

75.     Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

76.     Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class (or their third-party agents) entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

77.     Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' PII.

78.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the Class Members' sensitive PII.

79.     Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

80.     The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendants hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII — whether by malware or otherwise.

81.     PII is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

82.     Defendants improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

83.     Defendants breached these duties as evidenced by the Data Breach.

84.     Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by: disclosing and providing access to this information to third parties and failing to properly supervise both the way the PII was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

85.     Defendant breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the

personal information and PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

86.     Defendant further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

87.     Defendant have admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

88.     As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

89.     And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

90.     Defendant's breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II

### Unjust Enrichment (On Behalf of Plaintiff and the Class)

91.     Plaintiff incorporates by reference paragraphs 1- 67 as if fully set forth herein.

92. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided Defendant with their PII. In exchange, Plaintiff and Class Members should have had their PII protected with adequate data security.

93. Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the PII entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' PII for business purposes.

94. Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, did not fully compensate Plaintiff or Class Members for the value that their PII provided.

95. Defendant acquired the PII through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged. If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their PII, they would have entrusted their PII at Defendant or obtained services at Defendant's clients.

96. Plaintiff and Class Members have no adequate remedy at law.

97. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their PII.

98.     Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

99.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injuries.

100.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

101.    Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### THIRD CAUSE OF ACTION

**Invasion of Privacy (On Behalf of Plaintiff and the Class)**

102.    Plaintiff incorporates by reference paragraphs 1- 67 as if fully set forth herein.

103.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

104.    Defendant owed a duty to their current and former consumers, including Plaintiff and the Class, to keep this information confidential.

105.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' PII is highly offensive to a reasonable person.

106.    The intrusion was into a place or thing which was private and entitled to be

private.

107.    Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

108.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

109.    Defendant acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

110.    Defendant acted with a knowing state of mind when they failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

111.    Acting with knowledge, Defendant had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

112.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

113.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

114.    Unless and until enjoined and restrained by order of this Court, Defendant's

wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

115.     Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

116.     In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment (On Behalf of Plaintiff and the Class)

117.     Plaintiff incorporates by reference paragraphs 1- 67 as if fully set forth herein.

118.     This claim is pleaded in the alternative to the breach of implied contract claim.

119.     Plaintiff and Class Members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendant benefitted from (1) using their PII to provide services, and (2) accepting payment.

120.     Defendant appreciated or had knowledge of the benefits they received from Plaintiff and Class Members.

121.     Plaintiff and Class Members reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

122.     Defendant enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

123.     Instead of providing a reasonable level of security, or retention policies, which would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

124.     Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and Class Members' (1) PII and (2) payment because Defendants failed to adequately protect their PII.

125.     Plaintiff and Class Members have no adequate remedy at law.

126.     Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that they received because of their misconduct.

## **FIFTH CAUSE OF ACTION**

### **Breach of Fiduciary Duty-(On Behalf of Plaintiff and the Class)**

127.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

128.     Given the relationship between Defendants and Plaintiff and Class Members, where Defendants became guardian of Plaintiff's and Class Members' PII, Defendants became a fiduciary by their undertaking and guardianship of the PII, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff and Class Members' PII; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

129.     Defendant have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendants' relationship with them—especially to secure their PII.

130.     Because of the highly sensitive nature of the PII, Plaintiff and Class Members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendants' position, to retain their PII had they known the reality of Defendants' inadequate data security practices.

131.     Defendant breached their fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' PII.

132.     Defendant also breached their fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

133.     As a direct and proximate result of Defendant's' breach of their fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### SIXTH CAUSE OF ACTION

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act- 815 ICLS 505/1, *et seq*. (On Behalf of Plaintiff and the Class)**

134.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

135.     This claim is brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

136.     Plaintiff and Class Members are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e).

137.     Plaintiff, the Class, and Defendants are "persons" as defined in 815 Ill. Comp. Stat. § 505/1(c).

138.    The ICFA applies to Defendant because Defendant engaged in "trade" or "commerce," including the provision of services, as defined under 815 Ill. Comp. Stat. § 505/1(f). Defendants engages in the sale of "merchandise" (including services) as defined by 815 Ill. Comp. Stat. § 505/1(b) and (d).

139.    Defendants violated ICFA by, *inter alia*: failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' PII, which was a direct and proximate cause of the Data Breach; failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach; failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq.*, which was a direct and proximate cause of the Data Breach; omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff's and Class Members' PII; and omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

140.    Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of their PII.

141.    Defendant intended to mislead Plaintiff and Class Members and induce them to rely on their omissions.

142.     Had Defendant disclosed to Plaintiff and Class Members (or their third-party agents) that their data systems were not secure—and thus vulnerable to attack—Defendants would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the PII that Plaintiff and Class Members (or their third-party agents) entrusted to them while keeping the inadequate state of their security controls secret from the public. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class Members' rights.

143.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

144.     And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

145.     Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law.

146.     Defendant's wrongful practices were and are injurious to the public because those practices were part of Defendant's generalized course of conduct that applied to the Class. Plaintiff and the Class have been adversely affected by Defendants' conduct and the public was and is at risk as a result thereof.

147.     Defendant also violated 815 ILCS 505/2 by failing to immediately notify Plaintiff and the Class of the nature and extent of the Data Breach pursuant to the Illinois PII Protection Act, 815 ILCS 530/1, *et seq*.

148.     Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff and the Class seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Defendants' violations of the ICFA.

**SEVENTH CAUSE OF ACTION**

**Declaratory Judgment (On Behalf of Plaintiff and the Class)**

149.     Plaintiff incorporates by reference paragraphs 1- 67 as if fully set forth herein.

150.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

151.     In the fallout of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendants' actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

152.     Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following: Defendants owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it; Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act; Defendants breached, and continues to breach, their duties by failing to use reasonable measures to the data entrusted to it; and Defendants' breaches of their duties caused—

and continues to cause— injuries to Plaintiff and Class Members.

153.     The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to it.If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experiences a second data breach.

154.     And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages— while warranted for out-of-pocket damages and other legally quantifiable and provable damages— cannot cover the full extent of Plaintiff and Class Members' injuries.

155.     If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Defendants could experience if an injunction is issued.

156.     An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

**PRAYER FOR RELIEF**

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.     Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.     Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.     Awarding injunctive relief as necessary to protect the interests of Plaintiff and the

Class;

D.  Enjoining Defendants from further unfair and/or deceptive practices;

E.  Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Dated: December 5, 2024

Respectfully Submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger (IL Bar No. 6303726)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

Kelly Hyman*
**The Hyman Law Firm, P.A.**
515 North Flager Drive
Suite 350
West Palm Beach, Fl, 33401
T: (561) 538 - 9050
kellyhyman@thehymanlawfirm.com.

*Attorneys for Plaintiff and the Proposed Class*

*\*Pro hac vice forthcoming*